# McGregor and Wife *versus* Sibley & Stoops.

1. M., a married woman, had been selling sewing-machines as agent for H.; her husband transferred her personal property as his own to H. in payment of her debt to him; he sold to S. In a suit by M. against S. for the value of the property, she testified that H. had said to her that he wished her to continue in the business, would give her credit, &c. Evidence of subsequent expressions of dissatisfaction by H. as to the amount of indebtedness, not in her presence were not evidence in contradiction.

2. After the sale by H. to S., M., who had not before known of the sale to H., saw S. in possession of the goods, and was informed of the sale to him without being informed that he had not then paid for them. She did not inform him that she owned the goods. *Held*, that she was not estopped from claiming them afterwards.

3. Whether she would have been estopped had she then known that they were not paid for: *Dubitatur*.

4. When points are submitted without evidence to sustain them, the court should decline them; or if answered, the jury should be told that they had no application to the facts.

5. Harden *v.* Hays, 9 Barr 151; Neely *v.* Neely, 5 Harris 227, distinguished.

[McGregor *v.* Sibley.]

October 13th 1871.　Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Allegheny county:* No. 90, to October and November Term 1870.

This was an action of assumpsit by E. R. McGregor and Ann M. McGregor his wife, in her right, against John J. Sibley and Nesbit D. Stoops, commenced to April Term 1869.

The action was brought to recover the value of a number of sewing machines and other articles, claimed by Mrs. McGregor to be her property, which had been sold by her husband to the Home Sewing Machine Company and by them to the defendants.

The cause was tried June 22d 1870, before Sterrett, P. J.

Mrs. McGregor testified, that she had separate estate from her grandfather and mother, amounting to about $3000; that in January 1862, she paid to Elias Howe and A. B. Howe, then partners, $500 for the privilege of selling their sewing machines; she opened establishments in Pittsburg for the purpose, and furnished them at an expense of several hundred dollars, from her own means.　She bought machines and made money as long as she could get machines and the profits went into the business; the signs and business cards were in her name; both Elias and A. B. Howe knew whose business it was, and with whose capital it was carried on.　They separated, and the Howe Sewing Machine Company was formed; Elias Howe was the president; he told her she could get machines from the company, as she had been getting them before; and if she had not money enough, he would furnish her machines on credit; he knew she was a married woman; she continued in the business selling machines; having made an arrangement with Mr. Howe to furnish her machines from the company; she was kept from her store about ten days by sickness, and went there on the 17th of February 1868, to see Mr. Stockwell, the secretary of the Howe Company, who expressed his gratification "with things as they were."　In consequence of sickness she was not back at the store until the 27th, when she found Stoops, one of the defendants, in possession; she had no knowledge of his being in possession or contemplating it, until she then found him there; after that Sibley & Stoops were in possession.　She demanded the delivery of the goods to her; told Stoops everything belonged to her.

On cross-examination, she said her husband was her agent, and got his support out of the business; she employed agents to sell the machine, who reported sometimes to her husband and sometimes to herself; she made report to the company through her husband; she never heard of a sale or transfer till the 27th of February.

McGregor testified that he had no interest in the business, but carried on the correspondence sometimes in his wife's name and

sometimes in his own ; the correspondence with Howe was in his own name.   On the 18th of February 1868, there was a change ; Stockwell, secretary of the Howe Company, made an arrangement about the continuation of the business, Mr. Howe having died.   Stockwell said it was necessary to put things into a different shape, so as to settle up the estate ; the books were looked over, the indebtedness to the company and the assets to meet it ; the proposition was made to give them security for the indebtedness ; these assets were offered as security by myself.   \* \* \* In order to make the security valid a bill of sale was necessary of the whole assets ; this bill of sale I executed.   By the direction of Mrs. McGregor I had supervision of the business.''

The plaintiffs gave other evidence for the purpose of showing Mrs. McGregor's ownership, and that the business was transacted in her name.

For defendants, Stockwell testified that the company never did business with Mrs. McGregor, but always with Mr. McGregor ; the company's books showed that the accounts were in the name of Mr. McGregor.   In February 1868, he was at McGregor's establishment and examined the books ; they owed the company $7300 ; the inventory was taken by McGregor ; Mrs. McGregor was there part of the first day and helped make the inventory ; the bill of sale was made next day ; McGregor was left in charge of the store ; witness returned in a week with Stoops, who came for the purpose of buying the store ; he bought the stock ; Mr. McGregor was informed of the sale to Sibley & Stoops.   Witness had exhibited the trial balances at different times to Mr. Howe, who knew the business was carried on in the name of Mr. McGregor.

Defendants proposed to prove by the witness that he prepared monthly statements of the business of the company, including account of E. R. McGregor, which were exhibited to Elias Howe, president of the company, each month up to the time of his death, for examination and inspection, that upon such inspection the said Elias Howe expressed dissatisfaction with the account of E. R. McGregor having been permitted to swell to so large an amount, and directed it to be settled up.

This for the purpose of contradicting that part of the testimony of Mrs. Ann M. McGregor, in which she testifies to the knowledge of Elias Howe, that the business was carried on in Pittsburg by her with her own means, as well as that portion of her testimony in which she testifies to the willingness and agreement of the said Elias Howe to extend or enlarge the credit previously given.

This offer was objected to by the plaintiffs, on the ground that it is not competent to give in evidence any alleged declarations of Elias Howe made in the absence of plaintiffs.

The evidence was admitted and a bill of exceptions sealed.

[McGregor *v.* Sibley.]

On the cross-examination he said that Mrs. McGregor was at her store on the 18th and 19th of February 1868, whilst witness was there; she assisted in counting the needles.

D. Veech, Esq., testified that Mrs. McGregor was present on the 26th of February, when the bill of sale was made to the defendants; she claimed nothing at all; Mr. McGregor in her presence said that the goods were his; she knew all about the transaction; she made no objection; there was a note taken from Mr. McGregor to the defendants for the amount due to The Howe Company; and the amount of the stock was credited on the note. There was other evidence of Mrs. McGregor's presence on the 26th of February, and that she did not claim to own the goods. Also, that Mrs. McGregor had kept an account with Holmes & Sons, bankers, until May 1st 1866, and that Mr. McGregor opened an account with the same bankers on the 11th of August 1866, which was closed in March 1868.

The defendants gave in evidence the bill of sale, dated February 19th 1868, from Mr. McGregor to The Howe Company, for the goods, furniture and fixtures of the establishment, piano, &c., also "all bills due me" for sewing-machines sold. The schedule of the articles annexed, showed a number of sewing-machines, with their fixtures, furniture of the establishment, &c.; it amounted to $2885.57; they were sold to the defendants for the same sum.

The following were points of the defendants :—

4. Mrs. McGregor must satisfy the jury, that the business was carried on for her sole use and benefit, by and in the name of her husband, with the knowledge and consent of The Howe Machine Company; and the mere fact that Elias Howe, president of the company, was informed that she had invested money in the business, will not entitle her to recover.

5. If the jury believe that E. R. McGregor was the general agent of his wife to buy and sell goods and pay the indebtedness thus incurred by her, and that she held him out as her general agent, and that in pursuance of this agency, he transferred the machines and other articles purchased from The Howe Machine Company, to the company in part payment of her indebtedness to said company, then, so far as regards said machines, needles, &c., she cannot recover in this action.

7. Even should the jury believe that Mrs. McGregor had no knowledge of the purchase by defendants from The Howe Machine Company, until the morning of February 27th 1868, yet if she then knew of the same, and did not then notify the defendants, or either of them, until the commencement of this action, of her claim to the goods, but permitted them to take possession and control of the same, she cannot recover in this action.

8. Even should the jury believe that until the 11th day of August 1866, Mrs. McGregor carried on business in her own

[McGregor *v*. Sibley.]

name, and for herself, yet if on that date, there was a change, and thereafter the business was carried on for the benefit and behoof of E. R. McGregor, and in his own name, and that under these circumstances, the goods were sold to defendants, then the plaintiff cannot recover in this action.

The court answered the 4th point as follows:—

"4. This point is affirmed. If she merely informed the president of the company that she had invested money in the business, without more, this would not be sufficient notice to the company, that the business was being carried on as her own, with her own separate means."

The other points were affirmed without qualification.

The verdict was for the defendants.

The plaintiffs removed the record to the Supreme Court, and assigned the admission of defendants' offer of evidence, and the answers to the points for error.

*B. F. Lucas* (with whom was *A. G. Lucas*), for plaintiffs in error.—There was no evidence of which the defendants' 4th and 8th points could be predicated and an affirmative answer should have been refused: Covert *v*. Irwin, 3 S. & R. 283; Fox *v*. Union Academy, 6 W. & S. 353. As to the 5th point; although her husband might have been her agent in conducting the current business, he was not authorized to sell the whole establishment: White *v*. Cooper, 3 Barr 130; Kerns *v*. Piper, 4 Watts 222; Baring *v*. Peirce, 5 W. & S. 548.

*D. Watson* (with whom were *D. H. Veech* and *Veech*), for defendants in error.—Whenever knowledge of a party or want of the same becomes a material fact, his acts and declarations are admissible: Lobin *v*. Walkinshaw, 1 McAllister 186. Where one party has shown declarations to bring home knowledge, the other may rebut by the same kind of evidence: Neely *v*. Neely, 5 Harris 227; Harden *v*. Hays, 9 Barr 151. Mrs. McGregor was bound to inform the defendants: Pearsoll *v*. Chapin, 8 Wright 9; Beaupland *v*. McKeen, 4 Casey 124; Lewis *v*. Carstairs, 5 W. & S. 205; Commonwealth *v*. Moltz, 10 Barr 527.

The opinion of the court was delivered, October 30th 1871, by

WILLIAMS, J.—The ex parte declarations of Elias Howe were clearly inadmissible for the purpose of rebutting the testimony of the plaintiffs. They did not necessarily or directly tend to contradict any portion of her testimony. He may have been informed that the business was the plaintiff's, and that it was carried on with her own means, and he may have promised that if she had not money enough he would furnish her machines on credit; and yet subsequently, on inspecting the monthly statements of

[McGregor v. Sibley.]

the business of the company, including the account of E. R. Mc-
Gregor, he may have expressed his dissatisfaction that the
account had been permitted to grow to so large an amount, and
directed it to be settled up.　There is no necessary contradiction
or inconsistency between the two statements.　But if they were
utterly irreconcilable it would not be competent to give in evidence
his subsequent declarations in the absence of the plaintiff, for the
purpose of contradicting her testimony: Gordon v. Bowers, 4
Harris 226; Graham & Co. v. Hollinger, 10 Wright 55.　Such
declarations do not come within any of the recognised exceptions
to the general rule, which rejects all hearsay reports of transac-
tions, whether verbal or written, given by persons not produced
as witnesses.　The utmost extent to which the exceptions have
gone, is the admission of the declarations of a deceased sub-
scribing witness to a deed or will: Harden v. Hays, 9 Barr 151;
and the declarations, in a lucid interval, of a subscribing witness
to a note, who was insane at the time of the trial (Neely v. Neely,
5 Harris 227), in disparagement of the evidence afforded by their
signatures.　But there is a palpable distinction between such de-
clarations and those which were admitted in this case.　To sanc-
tion their admission would amount to a repeal of the rule which
forbids the introduction of hearsay evidence.

There was no error in answering the defendants' 4th and 8th
points in the affirmative, if nothing more than their affirmance as
mere abstract propositions was intended.　But if the court, as
the plaintiffs in error contend, submitted the facts upon which
the points were based to the determination of the jury, then the
answers were practically erroneous, for there was no evidence, so
far as we discover, to sustain the facts as hypothetically stated in
the points.　The court may not have intended by the answers
anything more than an affirmance of the points as abstract pro-
positions, but by their unqualified affirmance the jury may have
understood the court as intending to leave the facts on which they
were based to their determination.　Where points are submitted
without any evidence to sustain them, they should be declined
by the court, or, if answered, the jury should be told that they
do not arise out of the evidence, and have no application to the
facts in controversy between the parties.　The defendants' 5th
point was rightly affirmed, and the question raised thereby was
properly submitted to the jury.　If E. R. McGregor was the
general agent of his wife, to buy and sell goods and pay the in-
debtedness thus incurred by her, and if, in pursuance of this
agency, he transferred the machines and other articles purchased
from The Howe Sewing Machine Company to the company in part
payment of her indebtedness, is it not clear that, so far as regards
the machines and other articles so purchased and transferred,
there can be no recovery by the wife in this action?

[McGregor *v.* Sibley.]

But there was error in charging the jury, as requested in the defendants' seventh point, that if they should believe that Mrs. McGregor had no knowledge of the purchase by defendants from The Howe Machine Company until the morning of February 27th 1868, yet if she then knew of the same, and did not notify the defendants or either of them, until the commencement of this action, of her claim to the goods, but permitted them to take possession and control of the same, she cannot recover in this action. The defendants purchased and took possession of the goods in controversy on the 26th of February, and there is not a particle of evidence that the plaintiff knew that the defendants did not pay for the goods at the time of the purchase, if such was the fact, nor is there any evidence that they have paid anything on account of the price of the goods since the plaintiff had notice of their purchase. How then is she estopped, by her failure to notify the defendants of her claims, from asserting title to the goods? If the defendants have not been prejudiced by her silence, why should they be allowed to set it up as a bar to her claim? It is by no means clear that the plaintiff would be estopped from claiming the goods if the defendants had shown that they paid for them after she had notice of the sale. If there is a recovery by the plaintiff on the ground of ownership, the defendants may have recourse to The Howe Sewing Machine Company, on the implied warranty of title in the sale of the goods. And if so, what right have they to complain of the plaintiff's silence? But however this may be, it is clear that the plaintiff is not estopped from asserting her claim, unless it is shown that she has done or omitted something to the prejudice of the defendants.

Judgment reversed, and a *venire facias de novo* awarded.