## Enterprise Transit Company *v.* Hazelwood Oil Company, Appellant.

*Trespass—Possession—Constructive possession—Action.*

To enable a plaintiff to maintain an action of trespass quare clausum fregit, he must have the possession, actual or constructive, of the close which he alleges has been invaded. If the land entered by the trespasser is unimproved, possession will be presumed to accompany the title and this constructive possession will support an action. If the land is improved, that fact shows that it is in the actual possession of some one. In such a case the plaintiff cannot rest on his title, but must show his possession.

Where in an action of trespass it appears that plaintiff and defendant owned adjoining tracts of land, neither of which was improved in the ordinary sense, but upon both of which were oil wells, and it also appears that the defendant after having drilled and maintained a well on plaintiff's land for several years abandoned the well and removed the machinery, and that thereupon plaintiff re-entered and erected a wire fence along a portion of the boundary line, plaintiff's possession after re-entry is sufficient to support the action for the injury done by the wrongful boring of the well upon his premises.

*Estoppel—Ignorance of facts—Drilling oil wells.*

In an action of trespass for drilling an oil well on the plaintiff's land where it appears that neither party knew the boundary line between plaintiff's and defendant's lands, and that neither party actually knew that the well in question was drilled on plaintiff's land, the defendant cannot claim that plaintiff's knowledge of the existence and operation of the well for many years estopped him from recovering damages.


Argued Oct. 31, 1901. Appeal, No. 66, Oct. T., 1901, by defendant, from judgment of C. P. McKean Co., June T., 1896, No. 322, on verdict for plaintiff in case of Enterprise Transit Company v. Hazelwood Oil Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover damages for injuries resulting from the drilling of an oil land on plaintiff's land. Before MORRISON, J.

The opinion of the Superior Court states the case.

Defendant's points were as follows:

2. The construction of a wire fence which does not enclose anything and without the knowledge of the defendant, and the

removal of the same by the defendant, as soon as it had knowledge does not vest such possession of the premises in dispute as the law requires for it to have to maintain this action, and the evidence being that the only possession the plaintiff ever had was by the construction of such fence which was torn down by the defendant, the building of such fence by the plaintiff does not vest in the plaintiff possession of the premises in dispute, and such evidence should be disregarded. *Answer:* We decline to affirm this point.    But we say to you that in the view we take of the law, under the pleadings in this case, it is not material.    We think the plaintiff under the declaration in this case might recover any damages it sustained upon its land, at the hands of the defendant, without possession, if it owned the land.    Therefore we decline to affirm this point.    There is considerable of the point we could affirm, but taking it as a whole, I think it would be misleading to affirm it. [6]

3.  The undisputed evidence showing that the well in controversy was so located that it could be seen from part of lot 162, and that the plaintiff knew or had means of knowing when said well was located, and having knowledge of the location of the south line of lot 162 as surveyed by the engineer in the year 1878, and the well drilled in 1881, the plaintiff having since remained silent and acquiesced in the location of the said well and the operation thereof for a period of fifteen years, it is now estopped from claiming said well or the oil produced therefrom, and the verdict should be for the defendant. *Answer:* We decline to affirm this point as it is drawn.    We cannot say to you, as we understand the law, that the facts assumed in this point would estop the plaintiff from recovering, but we say to you that the facts assumed in this point—and I think they are practically undisputed—is evidence for the jury to consider on the question of whether or not the plaintiff did not know and concede that the true line between the lots was north of this well; in other words, that the well was on the defendant's own land.    And we used the term a while ago that it was strong evidence, and the counsel did not agree with that, and I am not disposed to qualify it.    I think it is quite strong evidence. If you find from the evidence that the plaintiff established its line in 1878, which is undisputed by the survey of Mr. Northrup, and if they knew of this well being being put down in

1881, knew where it was—the officers and agents of the plaintiff corporation—the persons whose duty it was to look after the property and go on the ground, if they knew where this well was located, and knew where its line was, and remained silent and never raised any question about it being on their land for nearly fifteen years, it is strong evidence that it was not on their land, that they didn't think it was. [7]

4. Under the pleading and evidence in this case the verdict should be for the defendant. *Answer:* We cannot affirm this point, but leave the question to the jury. [8]

Verdict and judgment for plaintiff for $824.95. Defendant appealed.

*Errors assigned* among others were (6–8) above instructions, quoting them.

*George L. Roberts*, with him *D. H. Jack* and *Chas. Gibbs Carter*, for appellant.—The action cannot be maintained unless the plaintiff has possession, actual or constructive. If the land is unimproved possession will be presumed to accompany the title. If the land is improved, that fact shows it to be in the actual possession of some one. In such case the plaintiff cannot rest on his title, but must show his possession: Wilkinson v. Connell, 158 Pa. 126; Olewine v. Messmore, 128 Pa. 470.

Trespass quare clausum fregit cannot be maintained if the defendant was in possession of the locus in quo when the alleged trespass was committed, and had been in possession for some years previous thereto: Collins v. Beatty, 148 Pa. 65; Mather v. Trinity Church, 3 S. & R. 509; National Transit Co. v. Weston, 121 Pa. 485; Busch v. Calhoun, 14 Pa. Superior Ct. 578.

Knowledge creates the duty to speak, and where that exists silence is enough to estop: Logan v. Gardner, 136 Pa. 588; Redmond v. Excelsior Saving, etc., Assn., 194 Pa. 643; Paine v. Monongahela Nat. Bank, 194 Pa. 405; Wahl v. Pittsburg, etc., Ry. Co., 158 Pa. 257.

Whether an estoppel results from established facts is a question for the determination of the court: Lewis v. Carstairs, 5 W. & S. 205; Miller's Appeal, 84 Pa. 395; Lewis v. Baker, 162 Pa. 510; Carr v. Wallace, 7 Watts, 394; Willis v. Swartz, 28 Pa. 413.

*D. I. Ball,* for appellee, cited on the question of possession; Clark v. Trindle, 52 Pa. 495; Hole v. Rittenhouse, 19 Pa. 305; cited on the question of estoppel: Woods v. Wilson, 37 Pa. 379; Knouff v. Thompson, 16 Pa. 357; Goundie v. Northampton Water Co., 7 Pa. 233; Carr. v. Wallace, 7 Watts, 401; Hill v. Epley, 31 Pa. 331; Thompson's Appeal, 126 Pa. 374; Schaidt v. Blaul, 5 Cent. Repr. 580.

OPINION BY BEAVER, J., April 21, 1902:

Plaintiff is the owner of lot 162 and defendant the owner of lot 163 in warrant 4008 in the township of Foster, in the county of McKean. "By stipulation between counsel for the respective parties, it is admitted that the legal title to lot 162 is in the plaintiff and to lot 163 in the defendant." The southern boundary of 162 is the northern boundary of 163. Defendant bored an oil well in the neighborhood of this boundary line. Plaintiff claimed that it was north of the defendant's northern line and defendant, that it was south of plaintiff's southern line. No artificial boundary was shown upon the ground. Where was the true boundary line? This was a question of fact found by the jury in favor of the plaintiff. For the purposes of this case, therefore, we must assume that the well was upon the land of the plaintiff.

1. After the defendant, or its vendor, put down the well upon the land of the plaintiff, it continued to pump oil therefrom and, after doing so for a number of years, abandoned the well, "pulled the casing" and removed the machinery from the premises. The plaintiff, after the removal, erected a wire fence along at least a portion of the line which divides the two lots belonging to the plaintiff and defendant respectively. The defendant now alleges that the plaintiff had no such possession of lot 162 at the time this suit was instituted as entitled it to maintain the action. "To enable a plaintiff to maintain this action, he must have the possession, actual or constructive, of the close which he alleges has been invaded. If the land entered by the trespasser is unimproved, possession will be presumed to accompany the title and this constructive possession will support an action. If the land is improved, that fact shows that it is in the actual possession of some one. In such case the plaintiff cannot rest on his title but must show his

possession:" Wilkinson v. Connell, 158 Pa. 126.   The plaintiff does not show, it is true, an actual foothold or pedis possessio.   Neither of the tracts of plaintiff or defendant seems to be actually improved in the sense in which that term is ordinarily used.   Both were used for oil purposes and both had wells upon them.   It is to be presumed, therefore, when the defendant abandoned his well and removed his machinery, his possession of the plaintiff's land ceased and that the plaintiff re-entered into the possession of the portion of the land which had been invaded by the defendant; but, when we add to such a presumption the actual building of a fence, the plaintiff must be held to have re-entered upon the possession of his land to the line thus indicated and this, it seems to us, would be sufficient to maintain the action.   " The general rule undoubtedly is that to maintain trespass quære clausum fregit there must have been an actual possession in the plaintiff when the trespass was committed or a constructive possession in respect of the right being actually vested in him, the ground of the action being the injury to the possession.   This doctrine does not apply in all cases in this country for, as an actual entry into wild and uncultivated land would give no notoriety of the possession or the change of property, it is declared to be impracticable and an utterly useless thing and, of course, a plaintiff may maintain trespass in such cases, without actual possession of the premises, without ever having made an entry upon the land, for not to give him such a right would be to expose his possession to serious and destructive injury, without any adequate remedy or redress, for, if he is seized of a lawful estate by inheritance or in fee, the law presumes that he is rightfully in possession to the extent of his boundary and his seisin is not confined to his mere occupancy of actual cultivation ; but, if he enters without title, he is then confined by metes and bonds strictly to his actual possession."   See cases cited in note, 3 Blackstone's Commentaries, Lewis's edition, 210.

The plaintiff was undoubtedly in constructive possession of the premises, until that possession was invaded by the defendant, and, when the latter withdrew and the plaintiff reasserted its possession, it was not necessary to restore the plaintiff's possession by an action of ejectment.   " Possession of the locus in quo of a trespass is the test of the right to sue for it.   For an

injury to wild land the owner may maintain an action by show-ing his title to it, but this is on the principle that the law gives him a constructive possession. When another person has the actual occupancy, the exhibition of a paramount title is not suffi-cient to sustain trespass either against the disseisor or against anybody else. The right of the true owner to the use and profits of the land is suspended, until he regains possession, either by an entry or under a legal judgment: " Caldwell v. Walters, 22 Pa. 378. The right of re-entry is here distinctly recognized as it is in other cases. The re-entry of the plaintiff, therefore, which was not disputed, was sufficient and its right to maintain the action is, therefore, complete.

2. Is the plaintiff estopped from making its claim for dam-ages ? The defendant thus states the question in this behalf: " Where plaintiff saw the defendant's predecessors in title drill the well on land in dispute and knew the location of the line or had the means of knowing its location and acquiesced in the drilling and operation of such well until the well was purchased by defendant, and thereafter for a period of about fifteen years, is it not estopped from now claiming damages by reason of said acts ? " The elements of estoppel by conduct are thus stated in Bigelow on Estoppel, 5th ed., 569 : " (1) There must have been a representation or concealment of material facts. (2) The rep-resentation must have been made with knowledge of the facts. (3) The party to whom it was made must have been ignorant of the truth of the matter. (4) It must have been made with the intention that the other party would act upon it. (5) The other party must have been induced to act upon it." Admit-ting that the plaintiff was bound to know where his line was, was it not equally incumbent upon the defendant, or those under whom it claims, to know the line ? The knowledge was pre-sumably the same in both cases. It is plain, therefore, that a material ingredient in estoppel of this kind is wanting, namely, the knowledge, on the one side, and ignorance on the other. Silence, under the circumstances, was not a misrepresentation as we view it and the plaintiff certainly did nothing which in-duced those under whom the defendant claims to drill the well and pump oil therefrom.

3. The market value of the oil removed from the well in ques-tion for six years immediately preceding the time of the bring-

ing of the suit was agreed upon as $824.95. The jury found for the plaintiff this exact amount. It is, therefore, evident that they allowed nothing for the destruction of the well or for the injury done to it by reason of its having been "pulled." The question as to the right to recover for damages for the pulling of the well is, therefore, immaterial.

4. We find no error in the rulings of the court in regard to the admission of testimony contained in the first and second assignments of error.

Upon a consideration of the whole case, we see nothing which would justify a reversal.

Judgment affirmed.