## Africa et al., Appellants, v. Trexler.

*Evidence—Competency of witness—Death of one party in interest—Ejectment—Defendant—Disclaimer—Act of May 23, 1887, P. L. 159—Treasurer's deed—Proffer of taxes—Declarations—Party not in interest.*

1. A codefendant in an action of ejectment who is called as a witness and complies with the conditions imposed by clause e, sec. 5, of the Act of May 23, 1887, P. L. 159, by filing a disclaimer and securing the costs, is relieved from the disability imposed upon a surviving party having an interest adverse to that of a deceased party. The competency of such a witness does not depend upon his interest in the

subject in controversy, but whether he has complied with the requirements of the act.

2. Where an owner of unseated land calls upon the county treasurer, inquires for the taxes due on the land, and pays all the taxes demanded of him by the treasurer, he does all that is necessary to discharge the land from liability to sale, and a subsequent sale of the land for taxes which the treasurer omitted to demand passes no title.

3. A treasurer's deed does not give purchasers at a tax sale constructive possession of the premises sold where the sale was wholly void.

4. The acceptance of service by defendant's counsel in an action of ejectment is in effect the same as if the defendant had been personally served by the sheriff, and is therefore prima facie evidence of the defendant's possession of the premises in dispute.

5. In an action of ejectment one of the defendants, formerly owner of an undivided half interest in the premises, was permitted to withdraw his plea of "not guilty" and to file a disclaimer of title and a bond to secure the payment of costs. It appeared that he had previously conveyed his undivided half interest in the premises to the other defendant by a general warranty deed. On the trial the plaintiffs showed title out of the commonwealth, the assessment and levy of taxes on the land in dispute, the return for the nonpayment of the taxes, and the subsequent sale and delivery of the treasurer's deed to one of the plaintiffs and to the predecessor in title of the others. The defendant, who was prima facie in possession, for the purpose of invalidating the treasurer's deed, called the person who had disclaimed, and who testified under objection, that previous to the tax sale he had called at the office of the county treasurer and asked for the taxes due upon the land in dispute, which was then owned by himself and defendant; that the treasurer furnished him the amount which he said was due for taxes on this land, and that the witness then gave the treasurer a check for the money which he demanded. Plaintiffs contended that the witness was adversely interested by reason of the fact that in the event of a recovery by the plaintiffs he would be liable on his clause of general warranty in its conveyance to the defendant and was incompetent to testify by reason of the death of one of the grantees under the treasurer's deed, whose right or interest in the property had passed to his devisees who were on the record as plaintiffs. *Held*, that under the act of 1887 the witness was competent.

6. In such a case the fact that the county treasurer was dead did not make the witness incompetent, as the treasurer was simply the agent and acting for the county, and his estate was not interested in the cause nor was it represented by any party to the record; nor could the plaintiffs show the declarations of the treasurer in regard to what took

place between him and the witness, made to a stranger to the title, not in the latter's presence, at a time subsequent to the interview at which the taxes were demanded and paid, such declarations being no part of the record, but simply ex parte and self-serving, and not admissible to contradict the witness's testimony as to what had previously occurred between him and the treasurer.

*Deeds—Recitals—Conveyance to "company."*

7. In an action of ejectment a deed in the chain of title of the defendant containing a recital disclosing the fact that the grantors had previously conveyed the premises to a certain American Stave & Timber Company was admitted in evidence under objection. There was nothing in the record to show that this company was incorporated, or, aside from the recitals in the deed, whether it was a partnership or an incorporated association. *Held,* that this recited conveyance did not vest the legal title to the land therein described in the company, because it had had no such legal existence as would entitle it to be a grantee in a deed of real estate; and that the subsequent deed was properly admitted in evidence.

Argued April 18, 1911. Appeal, No. 297, Jan. T., 1910, by plaintiffs, from judgment of C. P. Huntingdon Co., Sept. T., 1908, No. 11, on verdict for defendants in case of J. Murray Africa, and B. F. Africa, Walter G. Africa and J. Murray Africa, executors and devisees under the last will and testament of J. Simpson Africa, deceased, v. J. F. Trexler. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Ejectment for a tract of unseated land in Walker township. Before WOODS, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial when John L. Trexler, a witness called on behalf of defendant, was sworn, defendant made this offer:

Mr. Waite: I propose to prove now by the witness that about June 1, 1898, he received a communication from Huntingdon to the effect that the William Smith tract and the John Patton tract, the last named being the one involved in this issue, were advertised for sale by the treasurer of Huntingdon county; that in pursuance of that notice he came to Huntingdon on June 2, 1898;

that he went from the station to the office of the county commissioners in Huntingdon county and inquired about the taxes which were assessed to the two above named tracts of land, in which he was at that time interested, and that he was directed to the office of the county treasurer and that Peter Kean, one of the then commissioners of the county of Huntingdon, went with him to the office of the county treasurer, and that he asked the county treasurer for all the taxes that were due upon the William Smith tract in Porter township and the John Patton tract in Walker township, and that the county treasurer took down a book and, after some little time, handed the witness the amount of taxes which were due upon these lands, and that the witness then gave a check to the county treasurer for the amount of money which the county treasurer demanded; that the witness then left the office of the county treasurer, believing that he had paid all the taxes that were assessed against these two tracts of land, including the one involved in this issue; this for the purpose of showing that the witness made an honest effort to pay all the taxes that were assessed upon this land.

Mr. Bailey: Counsel for plaintiffs object to the testimony proposed from the witness for the following reasons:—

1. That having been a tenant in common with Jacob F. Trexler, the now defendant, the witness would be incompetent to testify in support of his former cotenant's title to the land in question, for the reason that the other party to the thing in action, J. Simpson Africa, died in 1900, and his rights upon the record have passed by his will to the plaintiffs in this action who stand as his representatives; by the death of J. Simpson Africa, both Jacob F. Trexler and John L. Trexler were rendered incompetent to testify adversely to his estate, under the Act of May 23, 1887, P. L. 158, as to anything which occurred during the lifetime of the decedent who died, according to the testimony in this case, in the year 1900, and the occurrence to which the recollection of the witness is directed took

place in 1898; the witness is incompetent for the reason that the result of his testimony would be not only adverse to the estate of J. Simpson Africa and to these plaintiffs but might result in injury to the title of that estate to the locus in quo.

2. The witness is incompetent even though he conveyed his estate in these lands by deed just offered in evidence by the defendant, dated January 25, 1905; for the reason that the said deed contains a covenant of general warranty which is still in force against the witness; if he is permitted to testify to the matter contained in the defendant's offer he will be testifying adversely to the estate of J. Simpson Africa in a matter which would directly affect the estate of J. Simpson Africa, and in a matter in which he is personally interested as against the estate of J. Simpson Africa, namely, in the support of his own covenant of warranty and against the estate of J. Simpson Africa, on their tax title.

3. The witness would be incompetent even if his deed contains no covenant of warranty whatever for the reason that a release of his interest, which would result in making him competent, must be the extinguishment of that interest and a disclaimer of title; by the conveyance put in evidence by the defendant the title of John L. Trexler or claim of John L. Trexler to the locus in quo was not extinguished or disclaimed, but passed still in existence and in full force to his cotenant, Jacob F. Trexler, the defendant.

4. The testimony is generally incompetent, irrelevant, immaterial and inadmissible and the witness incompetent under the act of 1887.

The Court. We will allow the evidence to be received for the present. Objection overruled. Bill of exceptions sealed for plaintiffs. [9]

*Errors assigned* were (1) refusing binding instructions for defendant; (5) in refusing to enter judgment n. o. v.; (2, 3, 4, 7, 8, 9,) rulings on evidence.

*Jas. S. Woods* and *T. F. Bailey*, with them *W. H. Woods*, for appellants.—John F. Trexler is interested adversely to the estate of the decedent by reason of his liability on his warranty and is therefore an incompetent witness: Rudolph v. Rudolph, 17 Pa. Superior Ct. 558.

*H. H. Waite*, with him *C. C. Brewster*, for appellee.— The witness complied with the provisions of the act, and he had no interest in the result of the suit. That he might be sued on his warranty is a mere contingency and only goes to affect the credibility of the witness: Dickson v. McGraw, 151 Pa. 98; Tarr v. Robinson, 158 Pa. 60.

OPINION BY MR. JUSTICE MESTREZAT, July 6, 1911:

This is an action of ejectment brought by J. Murray Africa, and B. F. Africa, Walter G. Africa and J. Murray Africa, executors and devisees under the last will and testament of J. Simpson Africa, deceased, against John L. Trexler and Jacob F. Trexler to recover the possession of a tract of unseated land situate in Walker township, Huntingdon county, containing about 437 acres. The præcipe was filed June 22, 1908, and on the same day counsel for the defendants appeared and waived the issuance and service of the writ upon their clients. Both parties filed abstracts of title. When the case was called for trial on February 9, 1909, John L. Trexler, one of the defendants, was permitted to withdraw his plea of not guilty and to file a disclaimer "of all title or claim of title or of possession to the premises described in the writ, . . . . and that he had neither title or possession of said lands at the time said suit was brought." He also filed a bond to secure the payment of the accrued costs.

On the trial of the cause the plaintiffs showed title out of the commonwealth, the assessment and levy of taxes for the years 1895 and 1896 on the lands in dispute, the return for nonpayment of the taxes, the subsequent sale and delivery of the treasurer's deed to J. Simpson Africa and J. Murray Africa, and then rested.

The defendant, Jacob F. Trexler, introduced the records tending to show a complete legal title from the commonwealth down through the several mesne conveyances to himself.   In the chain of his title was a deed from one Levi L. Fritch and Sarah, his wife, to John L. Trexler and Jacob F. Trexler which contained a recital disclosing the fact that the grantors had previously conveyed the premises to the American Stave & Lumber Company. The deed was admitted under objection, and an exception was noted.   John L. Trexler conveyed his undivided one-half interest in the premises to Jacob F. Trexler by deed dated January 25, 1905, and recorded March 8, 1909.

The deed of Fritch and wife to the Trexlers was properly admitted in evidence.   There is nothing in the record to show that the American Stave & Lumber Company was incorporated, or, aside from the recital in the deed, whether it was a partnership or an unincorporated association, and, therefore, no title passed from Fritch and wife by the deed of August 4, 1894: Burns v. McCabe, 72 Pa. 309; Jackson v. Sisson, 2 Johns. Cas. (N. Y.) 321. The Superior Court correctly disposed of this question in the following language of its opinion in Trexler v. Africa, 42 Pa. Superior Ct. 542, 547: "It does not appear in the record that the American Stave & Lumber Company was a corporation.   It must, therefore, have been a partnership name or a fictitious name, and under the above quoted authority, the conveyance by Fritch and wife by the deed of August 4, 1894, to the American Stave & Lumber Company did not vest the legal title to the land therein described in that company, because it had no such legal existence as would entitle it to be a grantee in a deed of real estate.   This left the legal title still in Fritch and wife, and their subsequent deed of September 13, 1899, to the plaintiffs (Jacob F. Trexler and John L. Trexler), vested the legal title in the latter . . . . : Enterprise Transit Co. v. Hazelwood Oil Co., 20 Pa. Superior Ct. 127; Wilkinson v. Connell, 158 Pa. 126.   We need not discuss the ques-

tion whether the deed to the American Stave & Lumber Company vested an equitable title in that company, because there is no one in possession of the locus in quo claiming under such title, and it is not the rule of law that an equitable title authorizes the holder of it to go into possession of land without additional authority to take possession."

For the purpose of invalidating the treasurer's deed and thereby defeating the plaintiffs' title, the defendant called John L. Trexler as a witness, and offered to prove by him that on June 2, 1898, he called at the office of the county treasurer and asked him for the taxes due upon the William Smith tract and the John Patton tract of land (the latter being the land in dispute), which were then owned by himself and the defendant, that the treasurer furnished him the amount which he said was due for taxes on these lands, and that the witness then gave the treasurer a check for the money he demanded. The plaintiffs objected to the testimony on the ground that the witness was incompetent to testify by reason of the death of J. Simpson Africa whose right or interest in the property had passed to his devisees who were on the record as plaintiffs. The court overruled the objection and permitted the witness to testify. This raises the important question in the case.

The acceptance of service by the defendant's counsel was in effect the same as if the defendant had been personally served by the sheriff: Act of July 9, 1901, sec. 1, clause 14, P. L. 614, 1 Purd. 242, and was, therefore, prima facie evidence of the defendant's possession of the premises in dispute: Kirkland v. Thompson, 51 Pa. 216. The defendant had the right to attack the validity of the treasurer's deed: Miller v. McCollough, 104 Pa. 624. If, as alleged by him and offered to be shown by the witness, John L. Trexler, the latter called upon the treasurer, inquired for the taxes due on the land in dispute, and paid all the taxes demanded of him by the treasurer, he did all that was necessary to discharge the land from

liability to sale, and the subsequent sale to the plaintiffs for taxes omitted to be demanded passed no title: Dietrick and Wilson v. Mason, 57 Pa. 40; Breisch v. Coxe, 81 Pa. 336; Pottsville Lumber Co. v. Wells, 157 Pa. 5. This is undoubtedly the settled law of the state, and we do not know that the appellants controvert it. If, therefore, John L. Trexler was a competent witness and his testimony was believed by the jury, the treasurer's sale was invalid and the deed did not vest the title to the premises in the plaintiffs.

By sec. 4 of the Act of May 23, 1887, P. L. 158, 4 Purd. 5157, it is provided that no interest or policy of law shall make any person incompetent as a witness except as provided in sec. 5, of the act. Clause e, of sec. 5, is the only one having any relevancy to the question in hand, and it provides as follows: "Nor where any party to a thing or contract in action is dead, . . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased. . . . party, be a competent witness to any matter occurring before the death of said party . . . . unless the action be ejectment against several defendants, and one or more of said defendants disclaims of record any title to the premises in controversy at the time the suit was brought, and also pays into court the costs accrued at the time of his disclaimer, or gives security therefor, as the court in its discretion may direct, in which case such disclaiming defendant shall be a fully competent witness."

The plaintiffs contend that John L. Trexler is interested in the result of the case, and that his interest is adverse to the estate of J. Simpson Africa, deceased. This interest, it is claimed, arises from the fact that in the event of a recovery by the plaintiffs against Jacob F. Trexler, John L. Trexler will be liable to his brother upon the clause of

general warranty in the deed conveying his undivided interest in the land to his brother. It is, therefore, contended that John L. Trexler is interested adversely to the estate of the decedent whose representatives are plaintiffs, and that the witness is incompetent under clause e, of sec. 5, of the act above referred to. We think it manifest that this contention is not supported by the clause of the act in question. If it be conceded that John L. Trexler would be liable on his warranty if the plaintiffs recovered a judgment against the defendant and that, therefore, he is interested adversely to the right of the deceased party represented on the record by the plaintiffs, it would not necessarily follow that he was disqualified to testify under clause e, of sec. 5. The right of the witness to testify does not depend upon his interest in the question at issue. As we have seen, the act makes all persons competent witnesses with the exceptions noted in sec. 5. One of those exceptions denies the right of a surviving party to testify to any matter occurring before the death of the other party where the latter's interest in the subject in controversy has passed to a party on the record who represents his interest. That part of the exception might exclude John L. Trexler as a witness by reason of his liability on his warranty, which might be construed as an interest adverse to the right of the deceased in the premises in dispute. We need not, however, determine whether such interest would disqualify the witness, as it becomes unnecessary under the other part of clause e, which is quoted above. That part of the clause furnishes, as it were, an exception to the exception contained in the earlier part of the clause disqualifying a witness on the ground of an interest adverse to that of the deceased party. It relieves the witness from disqualification in actions of ejectment where he files a disclaimer and secures the payment of the accrued costs. In other words, when a codefendant in an action of ejectment is called as a witness and complies with the conditions imposed by this clause by filing a disclaimer and securing the cost he

is relieved from the disability imposed upon a surviving party having an interest adverse to that of the deceased party. Such witness in an ejectment suit occupies the same position as if the clause had no existence, and becomes a competent witness under sec. 4, of the statute. The competency of such a witness does not depend upon his interest in the subject in controversy, but whether he has filed a disclaimer and has paid or secured the payment of the costs which have accrued in the action. The wisdom of this provision we may not question; that was solely for the legislature, and its command must be obeyed. It follows that John L. Trexler having filed his disclaimer and secured the costs was a competent witness to testify to what occurred between the witness and the county treasurer in regard to his effort to pay the taxes assessed against the land in dispute.

The finding of the jury invalidated the tax title, and, therefore, the plaintiffs could not recover. The defendant having made the proper effort to pay the taxes charged against the land in dispute, and having failed by reason of the improper act of the treasurer and by no fault of his own, the effect as to the legality of the purchasers' title was the same as though the taxes had been actually paid. The sale was void and passed no title to the purchasers. The treasurer's deed did not give them constructive possession of the premises, and the defendant could question its validity: Miller v. McCullough, 104 Pa. 624. The plaintiffs having no title to the premises are not in position to oust the defendant from his possession. The deed upon which they rely was absolutely void and conveyed no title or right to the possession.

The death of the county treasurer did not make John L. Trexler an incompetent witness. The treasurer was simply the agent and acting for the county, and his estate was not interested in the cause nor was it represented by any party on the record. It is equally apparent that the plaintiffs could not show the declarations of the treasurer in regard to what took place between him and John L.

Trexler, and which were made at a time subsequent to the interview with the treasurer at which the taxes were demanded and paid: Young v. Commonwealth, 28 Pa. 501; McGregor v. Sibley, 69 Pa. 388; Romig v. Romig, 2 Rawle, 241; McPeake v. Hutchinson, 5 S. & R. 295. Such declarations were no part of the res gestæ, but simply ex parte or self-serving, and were not admissible to contradict Trexler's testimony as to what had previously occurred between him and the treasurer. They were made to a stranger to the title, and not by an agent of the defendant nor in the latter's presence, and hence, are not competent evidence to affect the defendant's title to the premises in dispute.

The judgment is affirmed.