## Andrews v. Glendale Hunting and Fishing Club

*A. C. Brown* and *J. D. Trax*, for plaintiff.

*M. A. Carringer* and *J. D. Stedeford*, for defendant.

WADE, J., January 13, 1949.—Plaintiff, A. G. Andrews, brought an action against defendant, Glendale Hunting and Fishing Club, under the Act of April 16, 1903, P. L. 212, and obtained a rule to bring ejectment within six months of the service of the rule. An action of ejectment was brought accordingly, and the action of ejectment is now before this court without a jury, pursuant to the provisions of the Act of 1874.

The parcel of land in controversy is bounded and described as follows: . . .

On August 1, 1940, Frank Merle Stanley and Myrtle E. Stanley, his wife, conveyed these premises to the Glendale Hunting and Fishing Club, which deed was recorded the same day. By an oversight the taxes for the year 1940 were not paid either by the seller or the buyer, but thereafter the taxes were paid regularly by the buyer. Also, the buyer continued to make valuable improvements on the premises and acted entirely in good faith as the owner of the property.

On August 18, 1942, plaintiff bid in the property at tax sale for $13.16 for the nonpayment of taxes for the year 1940 when the mistake in nonpayment occurred. The buyer then continued to pay the taxes and make improvements, and plaintiff did not record his tax deed until August 23, 1944, five days after the redemption period had expired. Counsel for defendant contends that plaintiff has not acted in good faith and charges him with unfair practices. This court, however, must decide the case on the tax statutes of Pennsylvania and the decided cases, equities to the contrary notwithstanding in this particular case. This court has no power to make exceptions for individual hardship, for such a system of jurisprudence would eventually give the court unlimited and dictatorial powers.

During the first week of August 1942 one of the members of defendant club, James Peacock, learned of the true situation, and immediately went to the court house in Tionesta in an effort to redeem the property. The testimony in this regard follows:

"A. Yes, I was in the tavern, Peg's Tavern, and Peg knowed I was from Carnegie and he said he heard the cabin was being sold and I investigated. I come up to the court house and asked if the Glendale Hunting and Fishing Club was being sold. I guess I went to the treasurer's office, it was the room on the right after I come in the front door. I inquired if the Glen-

dale Hunting and Fishing Club was being sold and told them where it was.

"Q. Did you offer to redeem the property?

"A. Yes, I talked with him for a few minutes and I said that if it was our cabin I would like to pay the penalty to redeem it.

"Q. What were you told?

"A. It was too late. After we talked a while I realized it was our cabin and he said it was too late, that it had been sold."

The position of counsel for the purchaser at the tax sale is that "if payment was refused then it was up to Peacock to make a legal tender of payment."

Various questions have been raised by both counsel for plaintiff and counsel for defendant, other than the question of redemption. However, if, under the facts here existing, the actions of James Peacock had the effect of a redemption, then the other questions become immaterial.

In general, "The privilege of redemption has always been liberally construed in Pennsylvania under the various acts of assembly regulating tax sales": Philadelphia v. Schaefer et al., 269 Pa. 550, 552 (1921).

Counsel for plaintiff contends that under the Act of March 13, 1815, P. L. 177, 6 Sm. L. 299, 72 PS §6091, which deals with sales of unseated lands, there is a provision for an "offer or legal tender", but that under the Act of May 29, 1931, P. L. 280, 72 PS §5971, which deals with seated lands, here under consideration, the act provides for redemption "by payment". Counsel then argues that under the Act of 1931 nothing short of actual payment can amount to a redemption.

For a case dealing with the Act of 1815 see Dubois v. Hepburn, 35 U. S. 1 (1836), where it is held that a bona fide attempt to pay was sufficient.

The case of Home Owners' Loan Corp. Tax Case, 149 Pa. Superior Ct. 440, decided in 1942, was based

upon the Act of 1931, dealing with the duty of a treasurer towards a person attempting to pay his taxes. The court said on page 443:

"True, the foregoing cases (cases reviewed) involved unseated lands, while in the instant case we are dealing with seated lands. This distinction does not affect the underlying principle before us."

The court in the case of Dubois v. Hepburn, 35 U. S. 1, also held that redemption statutes should receive a "liberal and benign construction in favor of those whose estates will be otherwise divested. . . ."

There is then placed squarely before this court the question of the duty of a treasurer where a person calls for a statement of the amount of his taxes, and clearly evinces a willingness to pay the taxes and penalties to redeem his property. In the case of Dietrick et al. v. Mason, 57 Pa. 40, at page 43, the court said: "It is argued that Dart & Fitch were bound to tender the full amount, and that no duty lay upon the treasurer except to receive what might be offered to him. This is not the law."

The undenied testimony in the case at bar is that James Peacock did make a bona fide attempt to redeem the property within the redemption period. However, counsel for plaintiff tries to explain away such an attempt by saying that he "evidently entered the commissioners' office in the court house (which the court knows of its private knowledge) is and was the room on the right after he come in the front door". The first door to the right of the customary front entrance to the court house is the treasurer's office. However, if one considers the front entrance from an architectural viewpoint, there is such a door which has been sealed for many years, and there is no entrance at this point to the commissioners' office or any other office. Counsel, therefore, infers an impossibility.

James Peacock testified that he was at the treasurer's office and made a bona fide offer to redeem the property before August 18, 1944, and this was not directly denied. Again, it is only inferentially attacked by saying that if the treasurer said it was too late, then perhaps he was right and Peacock was wrong. This is placing inference beyond the weight of the direct, detailed and uncontradicted testimony.

The case of Home Owners' Loan Corp. Tax Case, 149 Pa. Superior Ct. 440, decided in 1942, collects the cases on the subject of redemption and the duty of the treasurer in this respect. Counsel for plaintiff takes the view that the books are available and why didn't James Peacock examine the books for himself. As Chief Justice Agnew said in Breisch v. Coxe, 81 Pa. 336, at page 346, which was cited in the Home Owners' Loan Corp. case: "It is said, there are the tax books open to inspection, let him search them. But this is neither his business nor his duty."

However, in the case at bar the undisputed testimony of James Peacock is that he received information from the treasurer that it was "too late" to redeem; if it is the duty of the treasurer to inform a prospective redemptor of the exact status of his taxes, then certainly he would have a right to rely upon such advice. The Supreme Court in the case of Dietrick et al. v. Mason, 57 Pa. 40, at page 43, takes the view:

"The treasurer is the legal custodian of the books and the entries of the taxes and costs containing the information necessary to know the sum to be tendered. This information it is his duty to give, and he cannot even simply lay the books before the owner and compel him to search them for himself. . . . It is therefore the duty of the treasurer to state the taxes and costs to be paid, and if he misstate the amount, his miscalculation or omission shall not defeat the redemption."

In the case at bar an owner made a bona fide attempt to pay his taxes and redeem his property within the time allowed by law, and was deflected from making his legal payment by misinformation of a treasurer. The law in such a situation was well stated in the case of Africa et al. v. Trexler, 232 Pa. 493, as follows:

"The defendant having made the proper effort to pay the taxes charged against the land in dispute, and having failed by reason of the improper act of the treasurer and by no fault of his own, the effect as to the legality of the purchasers' title was the same as though the taxes had been actually paid."

If a treasurer gives to a prospective redemptor information that it is "too late" to redeem and the owner acts upon this information, why should the redemption be any more defeated in one case than in the other? This court is of the opinion that the principle is the same both as to time as well as to amount of tax.

This case points up the problem of the relationship between a treasurer and an owner who desires to pay the amount of tax that may be due on his property or properties. When an owner comes to the counter of the treasurer and asks for the amount of taxes that may be due on one or more properties, the Supreme Court has said that it is not sufficient for a treasurer to make available to the owner the books of the office. "This information it is his duty to give, and he cannot even simply lay the books before the owner and compel him to search them for himself." (Dietrick et al. v. Mason, 57 Pa. 40, 43.) The cases make the status of a prospective taxpayer and a treasurer the same as that of a customer and a storekeeper. When a customer asks for his bill it is the duty of the storekeeper to furnish him a correct statement of the status of the account. The payment of the correct amount of taxes

should be facilitated, and the records of the treasurer's office should be so businesslike that a treasurer can perform this duty with security to himself and his office.