Calhoun, Trustee, Appellant, *v.* Drass.

Argued April 18, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, DREW and LINN, JJ.

450

*John Woodcock*, with him *Robert W. Smith* and *Robert B. Smith*, for appellant.

*George G. Patterson*, for appellee.

OPINION BY MR. JUSTICE KEPHART, June 29, 1935:

After a careful consideration of the facts involved in this appeal, we adopt in substance those found by the court below:

John N. Drass, an insurance real estate agent, enjoyed unlimited credit and conducted what was generally believed to be a profitable and successful real estate and insurance business in the Borough of Hollidaysburg for upwards of twenty years prior to July 1, 1930. At that time he was indebted to his father John B. Drass to the extent of $7,500, representing money borrowed. Sometime prior to July 1, 1930, Dorothy B. Lamison and husband made a contract with John N. Drass for the sale of their undivided half interest in a property at No. 406-408 Allegheny Street. The price was fixed at $6,000, with a commission of $300.

John B. Drass, the father of John N. Drass, authorized his son to purchase the property for him and to credit the purchase price upon his indebtedness. In pursuance of this arrangement the Lamisons executed a deed without knowledge on their part of the name of the grantee, John N. Drass personally paying the net purchase price of $5,700. John N. Drass held the deed from the Lamisons in his custody for over a year, or until October 1, 1931, when, upon the demand of John B. Drass, the deed, wherein John B. Drass was named as grantee,

together with the insurance policy on the premises and a lease to one Finn, duly assigned by John N. Drass, were delivered to John B. Drass, who held the deed in his possession without recording until April 12, 1932, three days after John N. Drass was adjudicated a bankrupt.

John N. Drass carried the account of the rents and expenses on this property in his own name until October, 1931, when the account was changed to the name of John B. Drass.

John B. Drass had no knowledge of his son's financial difficulties which led to bankruptcy in April, 1932. He acquired the property in good faith and after the deed was delivered in 1931 kept it in his custody without having it recorded. A close examination of the deed fails to disclose any alterations or erasures in the name of the grantee. The name John B. Drass appears in the body of the deed and is also endorsed on the back thereof. There is no evidence of smudge on the letter "B" and no suggestion that instead of the letter "B" there had been the letter "N."

From the testimony it is clearly established that John B. Drass at no time until the date of bankruptcy knew that his son John N. Drass had other creditors or that he had any intention to defraud other creditors. He had implicit faith in the integrity of his son and entrusted to him without question the handling of all of his business in connection with the buying and renting of said premises. His testimony is corroborated by the fact that he kept the deed in his possession without recording it for more than six months. This, it may be assumed, he would not have done had he had any knowledge of his son's financial trouble.

The court below was fully warranted in finding as a fact that there was an agreement between John B. Drass and John N. Drass, his son, whereby the Lamison property was to be purchased by the son for the father. While this finding is strongly contested, as are all the

findings of the court below, the evidence and inferences therefrom are more than sufficient to support it. Without reviewing in detail the testimony of the father and members of the family in support of it, it appears from the testimony of the father that his son John came to him and stated that "he had a chance of buying the Berckhemer property." This was the Lamison property. The father owned one-half the other property and this other piece "would be an advantage to this other property and so I agreed to him to leave him use my money to buy that property," and when he bought it "I understood it was for me."

Appellant's bases of contention that John N. Drass took title to the property are: that he paid the taxes, insurance and collected rent and that the transaction passed through John N. Drass; he paid for it with his own check and a certificate of indebtedness made out to him was assigned to the grantors. One of the witnesses testified that the "B" in the name had been written over another letter, and the witness left the impression that there was an erasure, and that John N. Drass stated in 1931 that he would "transfer that around to him, the lease and the deed." But the testimony of appellee was sufficient to lead to a conclusion opposed to appellant's. It appeared that John N. Drass had taken charge of all of his father's personal business, and had stated to others before any difficulty that the property really belonged to his father, that he bought the property for him. The children testified that the property was always regarded as that of the father; when John N. Drass bought it he received a commission of $300, for selling the lot. In addition the testimony of appellee, as recited, shows he owned the property. The facts were all before the court below and we must follow the rule that findings of the court below will not be disturbed where there is evidence or inferences from it to support them.

The proceeding was an attempt to set aside a conveyance because it created an unlawful preference to a cred-

itor, and delayed, hindered and defrauded creditors. To set aside a conveyance to a bona fide creditor by an insolvent it is necessary to show that the creditor had knowledge of the debtor's financial condition, and that he intended to become a party to a scheme whereby he might obtain preference over other creditors. Both knowledge and intent on the part of the grantor named in the deed are not sufficient unless it be established that the grantee was a party to it. Here we have a deed not from the debtor, but from a third party to a creditor, paid for by the partial extinguishment of a debt from the insolvent to grantee. Intent on the part of John N. Drass to create a preference is not sufficient to set aside the deed to John B. Drass from a third party unless John B. Drass was in some way a party to the contemplated preference. The fraudulent intent should be commonly understood and agreed on between the debtor and creditor, and of this inadequacy of consideration would be indicative. But here the price fixed was adequate. There was no evidence to show participation on the part of John B. Drass in any intent to delay, hinder or defraud creditors, or to create a preference in favor of himself.

Appellant's main contention, aside from the facts discussed, is that the deed was not a valid deed as it did not contain the name of a grantee when delivered to John N. Drass. Assuming then that creditors may contest such conveyance, where there is not sufficient evidence to support the allegation that the conveyance was made to delay, hinder or defraud creditors, this position of the appellant is not well taken. That a deed cannot exist as such without a grantee is fundamental.[1] But the law controlling such instrument is vastly different from that covering a deed without a grantee where authority is

---

[1] Allen v. Withrow, 110 U. S. 119; Bardin v. Grace, 167 Ala. 453; Adamson v. Hartman, 40 Ark. 58; Upton v. Archer, 41 Cal. 85; Board of Education v. Hughes, 118 Minn. 404.

given to some one to insert the grantee's name. While there is a conflict of decisions as to whether that authority should be in writing or whether it may be oral, express or implied from the circumstances, a majority of jurisdictions do not require written authority to insert the grantee's name; Pennsylvania is one of the oldest in that class. An agent of the grantor may insert the name of the grantee notwithstanding such direction is verbal, and many states recognize the doctrine of implied authority to insert the name of the grantee in the blank space left therefor.[2]

Our Statute of Frauds would seem not to require such written authority to insert the name of a grantee. That statute provides in effect that no estates shall be granted unless by a writing signed by the grantor "or their agents thereto lawfully authorized by writing." In Bell v. Kennedy, 100 Pa. 215, an action of assumpsit to recover back purchase money, as the result of a conveyance without the name of a grantee therein expressed, which was later filled in, we said: "It may be conceded, in case a deed, duly executed in other respects with a blank left therein for the name of the grantee, be put in that condition in the hands of a third person with verbal authority to fill up the blank in the absence of the grantor, and to deliver the deed to the person whose name is inserted as grantee, and the deed be so filled and delivered, it becomes a valid deed."

While this statement of law is urged as dictum, it has been followed and has had legal effect in this Commonwealth for years; we have found no authority to the contrary. A valid deed may be signed, acknowledged and delivered with the name of the grantee left blank

---

[2] Board of Education v. Hughes, supra; Hall v. Kary, 133 Iowa 465; Clemmons v. McGeer, 63 Wash. 446; Hemmenway v. Mulock, 56 How. Pr. 38 (N. Y.); Allen v. Withrow, supra; Derry v. Fielder, 216 Mo. 176; Bardin v. Grace, supra; 2409 Broadway Corp. v. Lange, 217 N. Y. S. 666.

provided there is authority, oral or written, express or implied in some one to fill in the blank. Assuming, as appellant contends, that John B. Drass's name was not in the deed when it was delivered and that the space therefor was left blank, in view of the testimony that there was an agreement between father and son, that the deed was to be for the father; that John N. Drass was a real estate agent and received a commission for making the sale; and that the grantors paid this commission and parted with the title—under such circumstances John N. Drass was a competent person to fill in the name of his father.

This disposes of the main contentions of the appellant, and the decree of the court below must be affirmed at appellant's cost.