## Bebar v. Dini Qua Hunting Club

*Joseph E. Altomare*, for plaintiffs.

*John E. Eberly* and *W. Scott Calderwood*, for defendants.

WOLFE, *P.J.*, January 23, 1980—For disposition is the claim of plaintiffs of ownership in premises being and situate in Howe Township, County of Forest.

## ISSUES

1. Do plaintiffs have a proprietary interest in the premises and if so the extent of their respective interest?

2. Do defendants have a proprietary interest in the premises and if so the extent of their interest?

## FINDINGS OF FACT

1. On August 13, 1952 V. V. Bowman and Julia Bowman, husband and wife, conveyed unto the Dini Qua Hunting Club for $250 a certain parcel of land lying and being in Howe Township, County of Forest, Pa., being Lot Number 16A and Lot Number 20 of a certain plot of lots of the grantors.

2. That the precise residence of the above named grantee as designated in the deed is 512 Lennox Avenue, Forest Hills, Pittsburgh 21, Pa.

3. Said deed indicating in the residence certificate the within named grantee as Martin Bebar, Kenneth White, William Pentz, John S. Ptasckiewicz, John N. Martin and Mike Jaczesko.

4. That said deed recited that possession of the premises shall be delivered immediately upon delivery of the deed. Said deed being recorded on February 11, 1953 in Volume 80, page 231.

5. That on October 7, 1961 William S. Pentz transferred all of his interest in said premises as recorded in said book and page and known as Vini Qua Hunting Club of which there are six owners at the present time all of his interest unto John N. Martin for the sum of $1,000 together with the power of attorney to sign his name to any papers that may pertain to the property.

6. That on April 9, 1962 John Ptasckiewicz transferred all of his interest in said property as

recorded and known as the Vini Qua Hunting Club of which there are five owners all of his interest to John N. Martin for the sum of $300 and granting unto the said John N. Martin the power of attorney to sign any name to any papers that may pertain to the property.

7. Mike Jaczesko died August 27, 1970 leaving his widow, Jewel Jaczesko, who has subsequently remarried and is now Jewel Kundravi and who inherited all of her husband's estate.

8. On March 9, 1972 Kenneth White died leaving to survive him his widow, Mildred White, who inherited all of his estate.

9. That on October 17, 1974 Dini Qua Hunting Club, John N. Martin, President-Secretary, conveyed Lot 20 unto Josephine M. Smith of the V. V. Bowman and Julia Bowman conveyance for the consideration of $1,000.

10. On October 31, 1974 Dini Qua Hunting Club, John N. Martin, President-Secretary, granted and conveyed Lot Number 16A unto John N. Martin and Helen Martin, husband and wife, for the consideration of $6,500 of the aforesaid V. V. Bowman and Julia Bowman conveyance.

11. The within cause of action was commenced by complaint in equity on March 17, 1976.

12. On November 3, 1978 V. V. Bowman, widower, granted and conveyed unto Martin A. Bebar, Jewel Jaczesko, John N. Martin and Mildred White for the consideration of $1 Lot Number 16A and Lot Number 20 being the same premises which V. V. Bowman and Julia Bowman, his wife, attempted and intended to convey unto the grantees or their predecessors in interest by deed dated August 30, 1952 wherein the grantees were styled "Dini Qua Hunting Club." The deed is intended to

legally convey the same premises to the said grantees herein, an undivided one-fourth share each as tenants in common.

13. That the aforesaid six initial men indicated as grantees in the deed of August 13, 1952 drafted unsigned bylaws to govern the operation of the club and the members' respective rights upon quitting or dying.

14. The Dini Qua Hunting Club and the Vini Qua Hunting Lodge is the one and the same organization.

15. That the hunting club is an unincorporated association.

16. That defendant, John N. Martin, and plaintiff, Jewel Jaczesko Kundravi, discussed the possibility of purchasing each other's respective interest in the premises.

17. That the respective interest owners were of the opinion the club bylaws controlled the disposition of their respective interest as a matter of law in the hunting club.

18. That all parties acted in good faith in their respective dealings with each other and with Josephine M. Smith, there being no misrepresentations or frauds but rather mistaken conclusions of the effect of the operation of law upon their respective rights.

19. Neither Martin Bebar nor Kenneth White has divested themselves of their respective interest in the premises as a matter of law.

20. That Martin Bebar and John N. Martin negotiated for the sale of the Bebar share to Martin in 1958.

21. That on March 25, 1968 the club filed a fictitious name.

22. That in October, 1975 defendant Josephine

M. Smith finished the construction of a home on Lot 20.

23. That defendant Josephine M. Smith did not have a title search made of the premises purchased by her nor did she have any overt knowledge of the claim of plaintiffs until her home was nearly or completely constructed; however, she did possess knowledge that other parties had a past interest in the club.

24. That the club building has been enhanced over the years from the date of its construction.

## Discussion of Questions of Law and Conclusions of Law

Defendants John N. and Helen Martin urge us to find they are the sole owners of Lot 16A subject to a measure of money of one-fourth value of the hunting club due Jewel Jaczesko Kundravi by reason of Mike Jaczesko's periodic contributions before his death.

Plaintiffs urge us to hold the second deed from V. V. Bowman as widower dated November 3, 1978 is controlling because the initial deed to the Dini Qua Hunting Club is void as the club is an unincorporated association and no title passed from the grantors and thus in conjunction with the conduct of the initial six members their respective interest should be: Martin A. Bebar, an undivided one-sixth, Jewel Jaczesko Kundravi, an undivided one-third, John N. Martin, an undivided one-third and Mildred White, an undivided one-sixth.

Defendant, Josephine M. Smith, urges us to conclude the six or their successors in title are estopped from deteriorating her title and in any event defendant, John N. Martin, is subject to estoppel by

deed from asserting any claim to her title and concludes at the least she acquired a one-half interest in the real estate conveyed to her, the same being the original one-sixth interest of John N. Martin plus the interest of the two members that he had acquired, to wit, Pentz and Ptasckiewicz totaling a three-sixths or one-half interest.

Our initial impression is, at best, this course of events has created an equitable quagmire. It is first necessary to resolve the effect, if any, of the conveyance of V. V. Bowman and wife to Dini Qua Hunting Club on August 13, 1952. We are told since the club is an unincorporated association no legal title passed to anyone and title remains in the grantors until the conveyance of V. V. Bowman, widower, of November 3, 1978: Hawk v. Hawk, 88 Pa. Superior Ct. 581 (1926), which holds a grant to an organization of this sort is a grant to no one. We must nevertheless consider the reason for this ruling which is still the current law as far as we can discern. The reason that a grant to an unincorporated association or to such an association where a trustee is not named is that it inhibits the alienation of realty and such an organization is declared to have no legal status as a grantee. The court was confronted with a similar problem in Trexler v. Africa, 42 Pa. Superior Ct. 542 (1910), wherein a conveyance was to a mere partnership. It was held a conveyance of real estate to a partnership in its firm name fails to carry the legal title to the land; such a conveyance does, however, vest an equitable estate in the firm and when the firm style contains the surnames of all of the partners, the conveyance passes legal title to the individuals for the firm.

On appeal, in the case of Africa v. Trexler, 232 Pa. 493, 81 Atl. 707 (1911), the court affirmed the holding of the Superior Court as well as its language:

"'We need not discuss the question whether the deed to the American Stave & Lumber Company (unincorporated) vested an equitable title in that company, because there is no one in possession of the locus in quo claiming under such title, and it is not the rule of law that an equitable title authorizes the holder of it to go into possession of land without additional authority to take possession.'"

This rule, however, does not per se negate and make void ab initio all such conveyances as was recognized in Burns v. McCabe, 72 Pa. 309 (1873), recognizing the principle, id certum est quod certum reddi potest. Hence, it is not all conveyances to an unincorporated association that renders the conveyance void. Indeed, it has been held a deed may make a valid conveyance of realty when the name of the grantee is left blank provided there exists authority either oral or written, expressed or implied, in someone to fill in the blank: Calhouns, Trustee, v. Drass, 319 Pa. 449, 179 Atl. 568 (1935). Finally, we are told Nesbitt v. Letz Hunting Club, 24 D. & C. 2d 706 (1960), controls the instant case. A fast reading of this case may lead one to conclude so, however, upon analyzing the facts in Nesbitt, supra, a member of the Letz Hunting Club executed and delivered to plaintiff "an indenture" covering all of his right, title and interest in and to the club and plaintiff brought an action in equity to compel the other members to admit him which they refused. The court discusses numerous cases holding that membership in an association is not transferrable without the consent of the association and an "'unincorporated association is not a separate entity and has no existence apart from the members who compose it: 13 Standard Pa. Practice 48'" and "'[t]he title, legal or equitable, to any property acquired for the use of such an association vests not

in the association as such, but in the members thereof in their joint and associated capacity.'" Nesbitt v. Letz Hunting Club, at 712, 713. The members of an association hold their respective shares as joint tenants rather than as tenants in common.

In the instant case we are not confronted with the issue of the enforcement of an indenture contract of membership as was presented in Nesbitt, supra, but rather the respective proprietary rights of the original members as altered by their subsequent conduct.

In our opinion the original six members of the club considered themselves as grantees in the deed of August 13, 1952. This is evident from their respective signatures indicating their address as grantees. That is to say, the deed is simply not to the "Dini Qua Hunting Club" with its address at 512 Lennox Avenue, Forest Hills, Pittsburgh 21, Pa. If that were the case we would have no difficulty in holding no title left V. V. Bowman and his wife on August 13, 1952. Equity will seek to enforce the intent of the parties to the transaction if it is not illegal or against public policy. We believe our conclusion is strengthened by the subsequent conduct of William Pentz and John Ptasckiewicz in their assignment of their one-sixth interest unto John N. Martin. Clearly these two considered themselves as one-sixth holder of the "property located in Howe Township, Forest County, State of Pennsylvania." So too, the testimony of Mrs. Mildred White that her deceased husband, Kenneth White, never sold his share, as well as the testimony of Martin Bebar that although he quit the club he did not sell his share or authorize anyone to sell his share for him.

Although an association has no separate legal entity and must act through its members pursuant

to its constitution, bylaws, rules or regulations, nonetheless, these regulatory provisions control the members' rights and duties inter se, but cannot deteriorate their respective title rights.

Nor can we equitably accept the argument that the self-appointment by John N. Martin as President-Secretary of the club has any validity in the conveyance to Josephine M. Smith on October 17, 1974 other than the respective interests he held at that time, to wit, a one-half interest in Lot Number 20. We conclude the same as to the deed of John N. Martin in his self-appointed capacity as President-Secretary of the club of October 31, 1974 unto himself and to his wife, to wit, as a conveyance of his individual one-half interest to Lot Number 16A.

Having concluded that the initial conveyance of V. V. Bowman and Julia Bowman of August 13, 1952 of the two lots is a valid conveyance, the subsequent deed of V. V. Bowman, widower, of November 3, 1978 to the grantees therein conveys nothing.

Josephine Smith accepted her property on the faith of John N. Martin that he as the sole surviving title owner of the property conveyed to her. This was error and it was compounded by the lack of a title search as well as the advice of counsel. We cannot accept her argument she is in the position of a good faith and innocent purchaser and the other parties should be estopped from claiming any interest to the property conveyed to her other than John N. Martin. Mrs. Smith knew of past claims to the premises and was at the least put on notice to inquire as to any proprietary rights these parties may have. Indeed, a further complication is the wife of John N. Martin did not join in that deed to her thereby divesting her inchoate surviving interest.

Nor have we ignored the unsigned bylaws of the club members. We appreciate that John Martin undoubtedly was convinced these bylaws were controlling as to the disposition of title. It is equally evident that other members did not think so. Although both Kenneth White and Martin Bebar "quit" the club, they did not divest themselves of title.

A further complicating problem is the enhancement in value of the premises since the original acquisition. Much testimony was heard of the improvements, the payment of dues, the attempt to purchase outstanding interests and the like. Notwithstanding, there exists no evidence of record as to the value of the respective lots with the improvements thereon that we could make a determination of a monetary adjustment between the parties. Indeed, we have not been called upon to do that nor do we think we could under the facts before us.

Equity is not a panacea for all ills; however, equity looks upon that as done which ought to have been done. It is evident further action in the nature of partition among these parties may have to be instituted in the event they are unable to negotiate an agreement among themselves.

For these reasons we enter the following

## CONCLUSIONS OF LAW

1. The deed of V. V. Bowman and Julia Bowman of August 13, 1952 unto Dini Qua Hunting Club conveyed Lot Number 16A and Lot Number 20 unto Martin Bebar, Kenneth White, William Pentz, John S. Ptasckiewicz, John N. Martin and Mike Jaczesko as tenants in common.

2. The assignment and transfer of all of the right, title and interest of William S. Pentz and John

S. Ptasckiewicz created a total of one-half interest in the two lots in John N. Martin.

3. The deed of John N. Martin as President-Secretary of Dini Qua Hunting Club of October 17, 1974 unto Josephine M. Smith conveyed his individual one-half interest in Lot Number 20.

4. The deed of John N. Martin as President-Secretary of Dini Qua Hunting Club of October 31, 1974 unto John N. Martin and Helen Martin, husband and wife, conveyed the individual interest of John N. Martin to the grantees of one-half interest in Lot Number 16A.

5. The deed of V. V. Bowman, widower, of November 3, 1978 unto Martin A. Bebar, Jewel Jaczesko, John N. Martin and Mildred White conveyed nothing.

6. The proprietary interest of Mildred White as surviving spouse of Kenneth White is a one-sixth interest in Lot Number 16A and Lot Number 20.

7. The proprietary interest of Martin A. Bebar is a one-sixth interest in Lot Number 16A and Lot Number 20.

8. The proprietary interest of Jewel Jaczesko Kundravi is a one-sixth interest in Lot Number 16A and Lot Number 20.

9. The proprietary interest of Josephine M. Smith is a one-half interest in Lot Number 20 subject to the one-sixth interest therein of Mildred G. White, the one-sixth interest of Martin A. Bebar and the one-sixth interest of Jewel Jaczesko Kundravi.

For the foregoing reasons we enter the following

## DECREE NISI

And now, January 23, 1980, the proprietary interests of the parties are:

1. John N. Martin and Helen Martin, an undivided one-half interest in Lot Number 16A.

2. Mildred White, an undivided one-sixth interest in Lot Number 16A and Lot Number 20.

3. Martin A. Bebar, an undivided one-sixth interest in Lot Number 16A and Lot Number 20.

4. Jewel Jaczesko Kundravi, an undivided one-sixth interest in Lot Number 16A and Lot Number 20.

5. Josephine M. Smith, an undivided one-half interest in Lot Number 20.

The parties are granted ten days to file exceptions and in the absence thereof, upon praecipe, the prothonotary shall enter the within decree as final and enter it on the judgment index of the law side of the court and cause a certified copy thereof to be recorded.

All record costs to be equally paid by the parties.